UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Brendan William Najar,<br><br>    Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi[1], Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:21-cv-01096-DJA<br><br>**Order** |

Before the Court is Plaintiff Brendan William Najar's motion for reversal or remand (ECF No. 15) and the Commissioner's cross motion to affirm (ECF No. 16) and response (ECF No. 17). Plaintiff filed a reply. (ECF No. 18). Because the Court finds that the ALJ's decision is not supported by substantial evidence, it grants Plaintiff's motion to remand (ECF No. 15) and denies the Commissioner's cross motion to affirm (ECF No. 16). The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.    Background.**

*A.    Procedural history.*

Plaintiff filed an application for Supplemental Security Income benefits on July 18, 2017, alleging an onset of disability commencing August 30, 2009. (ECF No. 15 at 3). The Commissioner denied his claim and Plaintiff requested a hearing before an Administrative Law Judge. (*Id.*). The ALJ issued an unfavorable decision on October 23, 2020. (*Id.*). Plaintiff requested review by the Appeals Council, which request the Appeals Council denied on April 15, 2021, making the ALJ's decision the final agency decision. (*Id.*).

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security and substituted as a party.

### B. The ALJ decision.

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 40-52). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 18, 2017. (AR 42). At step two, the ALJ found that Plaintiff has the following severe impairments: obesity, in combination with Scheuermann's disease and scoliosis; a mental impairment variously assessed as generalized anxiety disorder and major depressive disorder. (AR 42). At step three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 43). In making this finding, the ALJ considered Listings 1.04, 12.04, 12.06, 12.00G, along with Social Security Ruling 19-2p and section 1.00Q of the Listing of Impairments. (AR 43-45).

At step four, the ALJ found that Plaintiff has a residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) subject to limitations. (AR 45). Those limitations include that Plaintiff's,

> use of ramps and stairs is limited to no more than occasional. Use of ladders, ropes, or scaffolds is limited to no more than occasional. Balancing, stooping, crouching, crawling and kneeling are limited to no more than occasional. The claimant is limited to performing simple, repetitive tasks and interactions with coworkers, supervisors, and the general public is not more than frequent.

(AR 45).

At step five, the ALJ found that Plaintiff has no past relevant work. (AR 52). However, the ALJ found Plaintiff capable of performing occupations such as garment sorter, office helper, and mail clerk. (AR 53). Accordingly, the ALJ found that Plaintiff had not been disabled from July 18, 2017. (AR 53).

#### 1. The ALJ's social interaction RFC.

The ALJ ultimately concluded that Plaintiff's RFC included a "not more than frequent" limitation on his interactions with coworkers, supervisors, and the general public. (AR 45). In

making this determination, the ALJ analyzed the opinions of Dr. Rhiannon Rager, Dr. Mark Berkowitz, and Dr. R. Paxton. (AR 50). The ALJ noted that Plaintiff's statements to Dr. Rager were inconsistent with other substantial evidence of record. (AR 50). The ALJ stated that Dr. Rager's impressions appeared to accept Plaintiff's and his father's subjective complaints without question. (AR 50). As an example, the ALJ pointed out that, while Plaintiff reported experiencing "a few significant panic attacks requiring trips to the ER…[and] has lesser panic attacks a few times per month" records in evidence "document little to no report of panic attacks beyond the claimant's report…" (AR 50).

The ALJ found Dr. Rager's opinion regarding Plaintiff's degree of social limitation unpersuasive. (AR 51). Dr. Rager opined that Plaintiff "cannot consistently interact appropriately with supervisors, co-workers, and in public." (AR 383). In support of this limitation, Dr. Rager cited Plaintiff's presentation as shy, passive, and anxious; that Plaintiff has always kept to himself; that Plaintiff became flustered when responding; and that Plaintiff struggles with severe social anxiety and panic symptoms. (AR 383). However, the ALJ noted that Plaintiff's presentation at his consultative examination was inconsistent with his infrequent mental health treatment, demeanor, and generally normal mental status throughout the relevant period of review. (AR 51). "While the claimant is treated for a mental impairment, the symptoms and restrictions are not as limiting as the claimant described to Dr. Rager at the time of the consultative examination." (AR 51).

Additionally, the ALJ found Drs. Berkowitz and Paxton's opinions that the evidence did not establish a medically determinable mental impairment not entirely persuasive. (AR 50). Neither Dr. Berkowitz nor Dr. Paxton opined on Plaintiff's mental limitations, finding that, although his alleged mental conditions were severe, the doctors had received no evidence of treatment with medication. (AR 50). The ALJ found that, while the doctors' opinions were consistent with the record at the time they issued them, they were "not entirely persuasive," because the ALJ had received additional evidence at the hearing level. (AR 50). This evidence demonstrated that Plaintiff's primary care physician had prescribed him medication for generalized anxiety disorder and major depressive disorder. (AR 50).

The ALJ ultimately concluded that Plaintiff's RFC included the mental limitation that "interactions with coworkers, supervisors, and the general public is not more than frequent." (AR 45). The ALJ used this limitation in presenting a hypothetical to the vocational expert. (AR 81). Using that hypothetical, the vocational expert concluded that Plaintiff could perform jobs like garment sorter, office helper, and mail clerk. (AR 81-82).

## II.   Standard.

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

**III. Disability evaluation process.**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic

work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the

individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

**IV.   Analysis and findings.**

    *A.   The ALJ's RFC is not supported by substantial evidence.*

        1.   <u>The parties' arguments.</u>

Plaintiff argues that the interaction-with-others portion of the RFC is not supported by substantial evidence. (ECF No. 15). Plaintiff asserts that this is because the ALJ improperly interpreted raw medical data without a medical opinion to create the RFC. (*Id.* at 6-7). Plaintiff explains that the ALJ received new evidence at the hearing level that was inconsistent with Drs. Berkowitz and Paxton's opinions that Plaintiff had no mental limitations. (*Id.*). The ALJ also found Dr. Rager's opinion unpersuasive. (*Id.*). But, Plaintiff argues, having rejected Dr. Rager's opinion and without a medical opinion on the extent to which the new evidence would impact Plaintiff's social interaction limitations, the ALJ translated raw medical data to create the "not more than frequent" interactions portion of the RFC. (*Id.*). Plaintiff adds that the ALJ could have further developed the record—for example by obtaining additional medical opinions—to remedy this issue. (*Id.* at 8). The error, Plaintiff asserts, was not harmless because the ALJ incorporated

the "not more than frequent" limitation into the hypothetical the ALJ gave to the vocational expert. (*Id.* at 8-9).[2]

The Commissioner argues that the interaction-with-others portion of the RFC is supported by substantial evidence. (ECF No. 16). As a preliminary matter, the Commissioner argues that Plaintiff has failed to argue that the record was either ambiguous or inadequate to trigger the requirement to further develop it. (*Id.* at 9). Regarding Plaintiff's argument that the ALJ interpreted raw medical data to determine the "not more than frequent" portion of the RFC, the Commissioner argues that the RFC does not require support or review by a physician. (*Id.*). The Commissioner asserts that there is no requirement that the ALJ's RFC match or adopt any doctors' limitation. (*Id.* at 10). This is particularly true, the Commissioner argues, with respect to Dr. Rager's opinion, which the Commissioner asserts the ALJ properly found inconsistent with the remainder of the record which demonstrated that Plaintiff had normal psychological assessments. (*Id.* at 11-12). The ALJ did not err, the Commissioner argues, by relying on this record coupled with Drs. Berkowitz and Paxton's opinions—which provided no mental limitations—to create the RFC. (*Id.* at 13-14).

In reply, Plaintiff argues that the Commissioner's response missed the point. (ECF No. 18). Plaintiff explains that because the ALJ found Dr. Rager's opinion unpersuasive and found Drs. Berkowitz and Paxton's opinions not entirely persuasive after receiving new evidence, the ALJ did not rely on any medical opinions to create the "not more than frequent" limitation. (*Id.* at 3-4). Plaintiff argues that, without a persuasive opinion to support the RFC, the ALJ's "not more than frequent" limitation RFC was "created from whole cloth." (*Id.* at 4).

---

[2] Plaintiff also argues that to the extent the Court finds the "frequent" RFC determination to be supported by substantial evidence, the ALJ failed to encompass Dr. Rager's opinion that Plaintiff would act inappropriately around others into the RFC. (ECF No. 15 at 8). However, this argument is not fully developed, nor is it necessary for the Court to address, because Plaintiff argues it in the alternative. As a result, the Court will not address the issue. *See Moore v. Kijakazi*, No. 2:20-cv-01988-BNW, 2022 WL 716811, at *6 (D. Nev. Mar. 10, 2022).

2. <u>Analysis.</u>

In assessing a plaintiff's RFC, an ALJ must consider the combined effect of all the plaintiff's medically determinable physical and mental impairments, whether severe or non-severe. 20 C.F.R. § 404.1545(a)(2). An ALJ must also consider all the relevant medical evidence as well as other evidence, including subjective descriptions and observations of an individual's limitations by the individual and other persons (e.g., family, friends). *Id.* § 404.1545(a)(3). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 59-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. *See* 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

However, as a lay person, "an ALJ is simply not qualified to interpret raw medical data in functional terms." *Padillo v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); and citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). Under Ninth Circuit precedent, in determining RFC, the ALJ must take into account the claimant's testimony regarding her capabilities and consider all relevant evidence, including medical records, lay evidence, and pain. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Persuasive authority also provides that an ALJ must have a medical opinion to support his or her RFC. *Aliza W. v. Saul*, No. CV 20-09189-JEM, 2021 WL 3190902, at *4 (C.D. Cal. Jul. 28, 2021); *see also Perez v. Sec'y of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence"); *de Gutierrez v. Saul*, No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sep. 24, 2020) ("Without a medical opinion to support the conclusion that Plaintiff was able to perform medium work and could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or work for eight hours in an eight-hour workday, sit for eight hours in an eight-hour workday, and was limited to simple

routine tasks, the ALJ's RFC lacks the support of substantial evidence."); *Goolsby v. Berryhill*, No. 1:15-cv-00615-JLT, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (ALJ erred in including "simple routine tasks" in RFC when the medical record did not contain medical opinions supporting this limitation); *Winters v. Barnhart*, No. C 02-5171SI, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to his own medical judgment in lieu of that of a physician."); *Lopez-Navarro v. Barnhart*, 207 F. Supp. 2d. 870, 882 (E.D. Wis. 2002) (ALJ may not properly find that a claimant has a certain capacity to perform work-related activities without the support of a physician's medical assessment).

The Court finds that the ALJ's RFC is not supported by substantial evidence. The Court notes that the ALJ did consider the Plaintiff's medically determinable impairments and the relevant medical evidence. However, it is unclear how the ALJ reached the "not more than frequent" limitation. Drs. Berkowitz and Paxton did not issue mental limitation opinions. Dr. Rager issued a mental limitation opinion—concluding that Plaintiff "cannot consistently interact appropriately" with others—that the ALJ found unpersuasive. The ALJ thus did not rely on a physician's opinion to create the RFC.

While the ALJ, not a doctor, is responsible for determining the RFC, the ALJ should not interpret raw medical data to determine it. This appears to be what happened here because the ALJ determined that Plaintiff should interact with others "not more than frequent[ly]" based off newly admitted medical records at the hearing level that outlined Plaintiff's medications. But neither Drs. Berkowitz and Paxton nor Dr. Rager had reviewed these records. Instead, on the record before it, it appears to the Court that the ALJ created the "not more than frequent" limitation based entirely on the new medical records—raw medical data—that the ALJ received at the hearing level. The Court thus concludes that the ALJ's social interaction limitation—that Plaintiff's interactions with coworkers, supervisors, and the general public is limited to not more than frequent—is not supported by substantial evidence. This is not harmless error because the ALJ posed this hypothetical to the vocational expert for the expert to determine what kind of occupations the Plaintiff could perform.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 15) is **granted** with the modification that the case is remanded for further proceedings only on the issue of the ALJ's social interaction limitation.

**IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 16) is **denied**. The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: April 4, 2022

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE